JEANNETTE ZIROGIANNIS, an
individual, on behalf of herself and all
others similarly situated,

      **MEMORANDUM & ORDER**

    Plaintiffs,

 -against-      Civil Action No. 14-3954

NATIONAL RECOVERY AGENCY, INC.,

    Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**For Plaintiffs:**
Abraham Kleinman, Esq.
626 RXR Plaza
Uniondale, New York 11556-0626

**For Defendant:**
The Salvo Law Firm, P.C.
185 Fairfield Avenue, Suite 3C/3D
West Caldwell, New Jersey 07006

**HURLEY, Senior District Judge:**

  Plaintiff Jeanette Zirogiannis ("plaintiff") commenced this action against Defendant National Recovery Agency, Inc. ("defendant" or "NRA") alleging a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). Presently before the Court is defendant's motion for summary judgment. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

  The following facts are undisputed unless otherwise noted.[1]

---

[1] In her response to defendant's 56.1 statement, plaintiff asserted as "additional facts that require the denial of Defendant's motion" paragraphs 1 through 41 of her unverified Complaint, without the citation to any evidence. As allegations in a complaint do not constitute evidence,

NRA received two of plaintiff's accounts from National Grid Long Island ("National Grid") for the purpose of collecting past due balances. (Chille Declar. (DE 39-1) ¶ 1.) NRA sent an initial collection letter, dated June 27, 2013, to plaintiff at 19 East Shore Drive Babylon New York via first-class mail with proper postage affixed (the "June letter"). (*Id.* ¶ 3.) The letter stated that plaintiff's National Grid accounts had been forwarded to NRA for collection and provided the amount owed on each account. (*Id.* ¶ 5.) The letter also contained a validation notice required by 15 U.S.C. § 1692g. (Compl. Ex. A at pp. 1-2.) According to NRA, "[r]egular office procedures for the mailing of letters were followed by NRA" when it sent the June letter. (*Id.* ¶ 4.)

According to the excerpt of plaintiff's deposition submitted by NRA, Plaintiff "physically got" the June letter in August 2013. (Salvo Declar. Ex. A, dep. p. 29 line 23 to p. 30 line 3.) Plaintiff testified that during this time period her house was uninhabitable due to damage from "Superstorm Sandy;" she was living with her parents and would go back to her house "maybe two or three times a month." (Salvo Declar. Ex. A p. 27 line 24, p. 31 lines 5-7, p. 33 line 8.) She also testified that "I would have people pick up my mail. Our mail was getting mixed up. My whole block, the nine homes that are there, no one was living there." (*Id.* p. 27 lines 7-13.) "Because a lot of our mailboxes were knocked down, and the mail would get mixed up at that time. I would get my neighbor's mail or somebody would collect it because we weren't in the area. We had a lot of vandalism going on. So somebody would drive by and we'd say, do me a favor, pick up my mail, come and get it." (*Id.* p. 30 lines 7-13.)

---

these "additional facts" were not considered in ruling on this motion. Similarly, defendant's responses to these "additional facts" were not considered.

By letter dated August 22, 2013, plaintiff requested verification of the alleged debts. The letter listed plaintiff's address as 19 East Shore Drive, Babylon, NY 11702, was addressed to NRA, states it was being sent via facsimile, and reads as follows:

> Dear Sir/Madam:
> Enclosed please find a copy of your June 27, 2013 collection letter.
> I write with respect to NRA ID # YVY242.
> 1) I dispute the validity of all portions of National Grid account # 7071080622.
> 2) I dispute the validity of all portions of National Grid account # 7071080612.
> 3) Please send me verification of these disputed debts.
> 4) Please send me the name of the original creditor.
> 5) Please send me the address of the original creditor.
> 6) PLEASE SEND ME THE TRUE CORPORATE NAME OF NATIONAL GRID LONG ISLAND.
> Thank you,
> /s
> Jeanette Zirogiannis

(Compl. Ex. B (Capitalization in Original).)

Thereafter, NRA sent plaintiff a letter, dated August 27, 2013, which states in pertinent part:

> Our offices are in receipt of your letter of dispute pursuant to 15 U.S.C. § 1681s-2 of the Fair Credit Reporting Act. Please be advised we have reviewed your dispute and find the dispute lacking in any specific facts or information which would allow us to conduct an investigation. Because your dispute alleges no specific information to form the basis for an investigation, we are unable to investigate the dispute pursuant to 15 U.S.C. § 1681s-2(a)(8)(F)(I) of the FCRA.
>
> Federal Trade Commission regulation 16 C.F.R. § 660.4(d) states a direct dispute notice must include: (1) sufficient information to identify the account or other relationship that is in dispute, such as an account number and the name, address, and telephone number of the consumer, if applicable; (2) the specific information that the consumer is disputing and the explanation of the basis for the dispute; and (3) all supporting documentation or other information reasonable [sic] required by the

3

furnisher to substantiate the basis of the dispute. The documentation
may include a copy of the relevant portion of the consumer report that
contains the allegedly inaccurate information, a police report, a fraud or
identity theft affidavit, a court order, or account statements.
In acknowledgment of your dispute, we have requested that consumer
reporting agencies report the account as disputed. . . .

Listed below is a summary of the charges on the account and any
applicable fees or interest. Should you have any questions regarding this
account or if you wish to discuss payment arrangements, please feel free
to contact us . . . .

| Creditor | Account # | Principal | Interest | All Costs | Serv. Date |
|---|---|---|---|---|---|
| NATIONAL GRID [L.I.] | 7071080622 | 275.58 | .00 | .00 | 10/29/12 |
| NATIONAL GRID [L.I.] | 7071080612 | 133.63 | .00 | .00 | 10/29/12 |

(Compl. Ex. C (DE 1 pp. 16-17) ( the "August letter"); Chille Declar. ¶ 8.)

NRA then sent plaintiff a letter dated September 4, 2013 which states it was enclosing a copy of "the itemized bill(s) you requested. After review, please remit the balances by return mail." (Compl. Ex. C (DE 1 pp. 18-31) (the "September letter")); Chille Declar. ¶ 9.) The letter lists "the accounts included in the amount due" as "National Grid [Account No.] 7071080622 [Amount Owed] 275.58 [Service Date] 10/29/2012" and "National Grid [Account No.] 7071080612 [Amount Owed] 133.63 [Service Date] 10/29/2012." (*Id.*) Included as attachments were an "Account Balance List" for LIPA "Account 7071080622" and an "Account Balance List" for National Grid Account 7071080612." (Compl. Ex. C (DE 1 pp. 18-31).)

Plaintiff did not respond to the August or September letters. This action was commenced on June 25, 2014.

## DISCUSSION

I.  **Summary Judgment Standard**

Summary judgment pursuant to Rule 56 is appropriate only where admissible evidence in

4

the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of

the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing Anderson, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.' " *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

II.     The Parties' Contentions

Relying upon the mailbox rule and its presumption of receipt, which presumption it asserts was not rebutted, defendant maintains that plaintiff's August 22, 2014 verification and dispute letter was untimely. Having failed to rebut the presumption of on time receipt and because plaintiff "never informed NRA that she had not received the [June] letter in a timely fashion," NRA argues that it "has the right to assume its [June] Letter was received by Plaintiff within five days after it was sent. Thus, NRA properly classified Plaintiff's Dispute Letter as untimely under the FDCPA, and properly sent Plaintiff the [Fair Credit Reporting Act "] FCRA["] letter." (Def.'s Mem. in Supp. at p. 8.) Alternatively, NRA argues that if plaintiff timely disputed her debts, there is no FDCPA violation as NRA mailed Plaintiff full verification of her debts in both the August and September Letter. (*Id*. at p. 8-9.)

Plaintiff responds that whether or not NRA eventually made an effort to verify plaintiff's

6

debt is irrelevant to the fact that the August letter violated the FDCPA by informing plaintiff "that she is no longer entitled to the FDCPA's protection while in the same letter assigning responsibilities and duties to Plaintiff that do not exist under the FDCPA." (Pl.'s Mem. in Opp. at p.1.) According to plaintiff "[i]nforming a consumer that the FDCPA does not apply to a request to verify a debt, but rather claiming that the more stringent [Fair Credit Reporting Act] ["]FCRA["] applies, violated the FDCPA regardless of when the verification request was made, and regardless of the violator's subsequent actions." (*Id*. at p. 4.) To the extent that the timing of her request for verification is relevant, plaintiff argues there are triable issues of fact regarding the date she received the June letter. (*Id*. at p. 8.)

In reply, NRA asserts that the August letter is not actionable because even if it is a misrepresentation, it was not material as required under 15 U.S.C. § 1692e.

The parties do not dispute that plaintiff is a "consumer," the sum defendant attempted to collect from plaintiff is a "debt," and defendant is a "debt collector," as those terms are defined by the FDCPA. *See* 15 U.S.C. §§ 1692a(3), (5), and (6).

## II.     Relevant Statutory Provisions

### A.     The FDCPA

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors," *Sykes v. Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (citing 15 U.S.C. § 1692(e)), "and also sought to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,' " *Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 89 (2d Cir. 2008). "These purposes inform the FDCPA's many provisions." *Id.* Because the FDCPA is " 'remedial in nature . . . its terms must be

7

construed in liberal fashion if the underlying Congressional purpose is to be effectuated.' " *Hart v. FCI Lender Serv., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015) (quoting *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013).)

        1.        Section 1692e of the FDCPA

Section 1692e prohibits a debt collector from, among other things, "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e(10). A communication is deceptive if it is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012).

Whether a communication complies with the FDCPA is determined from the perspective of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). The purpose of this standard "is to ensure that the statute protects the gullible as well as the shrewd." *Jacobson*, 516 F.3d at 90. It is an objective test, that "preserve[s] the concept of reasonableness." *Id.* "The hypothetical least sophisticated consumer does not have the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." *Ellis*, 591 F.3d at 135. A consumer who receives a communication that violates the FDCPA need not show she was confused by the communication in order to prevail in her private cause of action. A plaintiff's burden is to demonstrate that the least sophisticated consumer would be confused. *Id.* at 91; *see Easterling,* 692 F.3d at 234 ("By its very nature, . . . the least sophisticated consumers test pays no attention to the circumstances of the particular debtor in question.") "[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view the language in

a defendant's collection letter is a question of law." *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013); *see Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) (finding that questions of whether language in collection notices violated 15 U.S.C. §§ 1692g and 1692e(10) presented "[o]nly legal issues").

Section §1692e does not expressly require that to fall within its prohibition a representation or means must be material; however, a number of courts have required materiality. *See Warren v. Sessons & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012 (collecting cases). Although the Second Circuit has not clearly adopted this requirement, it has cited *Warren* and similar cases with approval. *See Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 Fed. Appx. 89, 94 (2d Cir. 2012). Additionally, a number of courts within this Circuit have held that any violation of 1692e must be material. *See, e.g., ValleCastro v. Tobin*, 2015 WL 6478412, *6 (D. Conn. Oct. 27, 2015); *Abramov v. I.C. Sys. Inc.*, 54 F. Supp. 2d 270, 278 (E.D.N.Y. 2014); *Lotito v. Recovery Assoc. Inc.*, 2014 WL 4659464 (E.D.N.Y. Sept. 17, 2014); *Kearney v. Cavalty Portfolio Servs.*, LLC, 2014 WL 3778746, *9 (E.D.N.Y. July 31, 2014); *Fritz v. Resurgent Capital Servs. LP*, 955 F. Supp.2d 163, 170 (E.D.N.Y. 2013). This Court too will apply a materiality requirement.

### 2. Section 1692g of the FDCPA

The FDCPA imposes upon debt collectors the affirmative requirement of furnishing a "validation notice" to the debtor. 15 U.S.C. § 1692g. This written notice must include:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt

9

> collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.*

"After receiving a validation notice, the consumer has thirty days to mail a notice to the debt collector disputing the debt or requesting the name and address of the original debtor." *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010). "If the consumer notifies the debt collector in writing within the thirty-day period afforded by the Act, that she disputes the debt or any portion of the debt, the debt collector must 'cease collection.' . . . The debt collector may resume collection activities only when it has obtained verification of the debt, and has mailed a copy of the verification to the consumer." *Jacobson*, 516 F.3d at 89 (citing 15 U.S.C. § 1692g(b)). "However, the validation period 'is not a grace period'; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity." *Ellis*, 591 F.3d at 135. "[V]alidation period collection activities and communications must not overshadow or contradict the validation notice. *Ellis*, 591 F.3d at 135 (citing 15 U.S.C. § 1692g(b)); *accord Jacobson*, 516 F.3d at 90 ("[A] debt collector violates § 1692g(a), even if the collector includes an accurate validation notice, if that notice is overshadowed or contradicted by other language in communications to the debtor.") If a communication "would make the least sophisticated consumer uncertain of her rights" it violates the proscription against overshadowing

or contradicting. *Jacobson*, 516 F.3d at 90.

**B.     The FCRA**

The FCRA, 15 U.S.C. § 1681 et seq., "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information" and "imposes several duties on those who furnish information to consumer reporting agencies." *Longman v, Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. §§ 1681(b), 1681s-2).

Section 1681s-2 imposes duties upon furnishers of information to credit reporting agencies. Consumers have the right to dispute any information reported to a credit reporting agency, *see* 15 U.S.C. §§ 1681g(c)(1)(b)(iii), and if a dispute is filed, both the agency and the furnisher of that information have a duty to reasonably investigate and verify that the information is accurate, *see id.* §§ 1681(a)(1)(A), 1681s-2(b). The consumer may file a dispute directly with the furnisher and if so, only the furnisher has a duty to investigate in certain circumstances established by regulation. *See id.* §§ 1681s-2(a)(8); 16 C.F.R. § 660.4; *see also Longman*, 702 F.3d at 151. A direct dispute must be sent "directly to the [furnisher] at the address specified by the [furnisher] for such notices." 15 U.S.C. § 1681s-2(a)(8)(D). A direct dispute notice must include:

> (1) Sufficient information to identify the account or other relationship that is in dispute such as an account number and the name, address, and telephone number of the consumer, if applicable;
> (2) The specific information that the consumer is disputing and an explanation of the basis for the dispute; and
> (3) All supporting documentation or other information reasonably required by the furnisher to substantiate the basis of the dispute. This documentation may include, for example: a copy of the

11

> relevant portion of the consumer report that contains the allegedly
> inaccurate information; a police report; a fraud or identity theft
> affidavit; a court order; or account statements.

16 C.F.R. § 660.4(d). If a consumer submits a direct dispute, the furnisher must investigate the dispute, report the findings to the consumer within thirty days, notify the consumer reporting agency of any inaccurate information, and provide the corrected information to the agency. *Id*. § 1681s-2(a)(8)(E). However, a furnisher is not required to investigate a direct dispute if, inter alia, "the consumer did not provide sufficient information to investigate the disputed information as required by paragraph (d) of [16 C.F.R. § 660.4]." 16 C.F.R. § 660.4(f). In such a case, no later than five days after making the determination that sufficient information has not been provided, the furnisher must notify the consumer "and identify any information required to investigate the disputed information, which notice may consist of a standardized form describing the general nature of such information." *Id.* § 660.4(f)(2) and (3).

### IV. Defendant's Motion is Denied

As noted earlier, Defendant's motion is premised on the assertion that having properly mailed the June letter, it was entitled to presume that plaintiff received it in usual time. Accordingly, the Court's discussion begins with the mailbox rule.

"Proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Universal Serv. Admin. Co. v. PT–1 Commc'ns, Inc.*, 437 B.R. 766, 774 (E.D.N.Y.2010) (quoting *Hagner v. United States*, 285 U.S. 427, 430 (1932)); *accord Bronia, Inc. v. Ho*, 873 F. Supp. 2d 854, 859 (S.D.N.Y. 1995). Under New York law, personal knowledge of mailing procedures is required only to establish regular office procedure, not the

particular mailing. *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir.1993) (quoting *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir.1985)). Where "there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received. The mere denial of receipt does not rebut that presumption. There must be - in addition to denial of receipt - some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable." *Id.*; *accord Ma v. Merrill Lynch, Pierce, Fenner & Smith*, 597 F.3d 84, 92 (2d Cir. 2010) ( "[A] presumption of receipt arises where, as here, the record establishes office procedures, followed in the regular course of business, pursuant to which notices have been addressed and mailed."); *Akey v. Clinton Cnty., N.Y.*, 375 F.3d 231, 235 (2d Cir. 2004) ("Where, as here, the [defendant] provides evidence that the [documents] were properly addressed and mailed in accordance with regular office procedures, it is entitled to a presumption that the [documents] were received.").

While not cited by either party, the Court's research reveals that the mailbox rule has been applied in the context of FDCPA claims. *See, e.g., Mahon v. Credit of Placer County Inc.*, 171 F.3d 1197, 1201-02 (9th Cir. 1999); *Schneider v. Continental Serv. Group*, 2013 WL 6579609, *5-6 (E.D.N.Y. Dec. 16, 2013); *Krawczyk v. Centurion Capital Corp.*, 2009 WL 395458, *13 (N.D. Il.. Feb. 18, 2009); *Campbell v. Credit Bureau Sys., Inc.*, 2009 WL 211046, * 11-13 (E.D. Ky. Jan. 27, 2009); *Moore v. Blatt, Hasenmiller, Leibsker, and Moore, LLC*, 2006 WL 1806195, * 9-10 (C.D. Ill. June 29, 2006); *Johnson v. Midland Credit Management Inc.*, 2006 WL 2473004 (N.D. Ohio Aug. 24, 2006); *see also Zamos v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777, 785-787 (N.D. Ohio 2006); *Van Westrienen v. Amercontinental Collection Corp.*,

94 F. Supp. 2d 1087, 1097-98 (D. Or. 2000). The vast majority of these cases, however, discuss whether debt collectors have an obligation to ensure that debtors actually receive the §1692g validation notice. This Court's admittedly non-exhaustive research has found two cases that applied the mailbox rule's presumption of receipt vis-a-vis a determination whether a debt was timely disputed. *See Moore*, 2006 WL 1806195; *Campbell*, 2009 WL 211046. Both *Moore* and *Campbell* involved assertions that a debt collector's validation notice was never received and therefore the disputation of the debt's validity and request for validation was timely. In *Campbell*, the Court concluded that the plaintiff had proffered facts sufficient to raise a question of fact as to whether he received the validation notice given his custodial status and that in the absence of evidence as to whether the notice had been returned to the debt collector, denial of the defendant's motion for summary judgment was warranted. 2009 WL 211046 at * 11-13. In *Moore*, the Court concluded that "[p]ursuant to the mailbox rule . . . there is no genuine issue of material fact that [defendant] sent the initial demand letter containing the requisite validation notice to the Plaintiff on January 2, 2004. Given that the Plaintiff did not dispute this debt within thirty days of his receipt of the letter ([i.e.] in early to mid February 2004), [defendant] was under no obligation to suspend collection efforts." 2006 WL 1806195 at *9-10. Unlike the instant case, both *Moore* and *Campbell* involved a significant gap between when the validation notice was sent and the attempt to dispute the debt. The gap in *Moore* exceeded ten months and in *Campbell* exceeded two years.

This Court, however, need not decide whether the mailbox rule and its presumption of receipt in due course may render a communication disputing a debt and requesting validation untimely.

First, the evidence proffered by NRA is insufficient to invoke the mailbox rule. NRA's invocation is based on the assertion that "[r]egular office procedures for the mailing of letters were followed by NRA" when it sent the June letter. What NRA is required to submit is evidence "setting forth in detail an office practice or procedure that is followed in the regular course of business to effect the mailing . . . ." *Musah v. Houslanger & Assoc., PLLC*, 962 F. Supp. 2d 636, 640 (S.D.N.Y. 2013).

Second, whether or not the mailbox rule applies, NRA's August letter violates the FDCPA. There are a number of cases, cited by defendant, that hold that the right to dispute a debt under the FDCPA is waived and that the debt collector therefore has no duty to verify it if notification if not made within the thirty-day period. *See, e.g., Robinson v. Greystone Alliance, LLC*, 2011 WL 2601573 (D. Md. June 29, 2011); *Jones v. Invest. Retrievers, LLC*, 2011 WL 156851, *6 (M.D. Pa. Apr. 25, 2011); *Senftle v. Landau*, 390 F. Supp. 2d 463, 475 (D. Md. 2005). The impact of these cases on the present dispute, however, is not to remove the FDCPA from the equation but at best to direct focus on the pertinent provisions of the FDCPA under which the dispute should be analyzed. Whether or not the disputation of the debt is timely, § 1692e(10)'s prohibition against a debt collector using any materially deceptive or misleading representation applies. If the disputation of the debt is timely, then § 1692g's proscription against validation period communications overshadowing or contradicting the validation notice comes into play.[2] In this case, NRA's August letter violates the FDCPA whether analyzed under §1692g or §1692e(10).

In addressing the question of overshadowing or contradicting, the Court looks at the

---

[2] Contrary to NRA's suggestion, plaintiff is not complaining about a lack of validation.

totality of the communications from the debt collector. *Cf. Ellis*, 591 F.3d at 136-37 (holding that a validation notice is overshadowed where a debt collector serves a consumer with process initiating a lawsuit during the validation period, without clarifying that commencement of the lawsuit has no effect on the information conveyed in the validation notice). NRA's August letter would at the very least make the least sophisticated consumer uncertain of her rights. Contrary to the validation notice, it suggests that she must provide the basis for disputing the debt.

NRA's August letter is also materially deceptive or misleading, i.e. is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Easterling,* 692 F.3d at 233. In reaching this conclusion, the Court again looks at the totality of the communications between the debt collector and the consumer. Given the language in NRA's June letter that disputing of the debt must be done within thirty days of *receipt*, the absence of any statutory reference in the June letter and the specific reference in plaintiff's August 22 letter to NRA's June validation letter, the Court concludes that the August letter is materially misleading. It erroneously suggests that plaintiff's disputation and validation request are governed by only the FCRA despite the fact that plaintiff's letter specifically referenced NRA's June letter. In addition, it has the potential to influence the least sophisticated consumer to respond by providing the information requested under the misimpression she was required to do so under the FDCPA. A least sophisticated consumer would not understand from NRA's August letter that his/her disputation of the debt and validation request was not timely under the FDCPA. NRA's letter does not notify the consumer that the request is untimely and therefore NRA has the right to assume the validity of the debt under the FDCPA. Nor does it contain language to the effect that *to the extent* the consumer wishes to dispute the debt under the FCRA, additional information is needed.

In reaching this conclusion, the Court has taken into consideration that a debt collector who is also a provider of information under the FCRA has an obligation under the FCRA to investigate a disputed debt and if sufficient information is not provided to investigate has an obligation to so notify the consumer "and identify any information required to investigate the disputed information, which notice may consist of a standardized form describing the general nature of such information" 16 C.F.R. § 660.4(f) and that defendant's August Letter appears to be in accord with FCRA's governing regulation. Given, however, that NRA has also has obligations under the FDCPA, its correspondence must comply with that statute as well.

## CONCLUSION

Defendant's motion for summary judgment is denied.

**SO ORDERED.**

Dated: Central, Islip, New York
December 11, 2015          /s/  Denis R. Hurley
                           Denis R. Hurley
                           District Judge