UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X

JEANNETTE ZIROGIANNIS, an
individual, on behalf of herself and all
others similarly situated,

                        Plaintiffs,

        -against-

NATIONAL RECOVERY AGENCY, INC.,
                      Defendant.

------------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 14-3954

**APPEARANCES:**

**For Plaintiffs:**
Abraham Kleinman, Esq.
626 RXR Plaza
Uniondale, New York 11556-0626

**For Defendant:**
The Salvo Law Firm, P.C.
185 Fairfield Avenue, Suite 3C/3D
West Caldwell, New Jersey 07006
By: Cindy D. Salvo, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Jeanette Zirogiannis ("plaintiff") commenced this action against

Defendant National Recovery Agency, Inc. ("defendant" or "NRA") alleging

violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.

("FDCPA").  Presently before the Court is plaintiff's renewed[1] motion (1) to certify a

class consisting of  "(a) all natural person[s] in the State of New York; (b) to whom

Defendant sent a written communication containing language materially similar to

---

[1] By Memorandum & Order dated December 11, 2015, the Court denied
plaintiff's motion for class certification, without prejudice to renew, because it was
not properly supported by evidentiary materials and therefore numerosity, the only
requirement addressed by the Court, had not been demonstrated.

Exhibit C of the Complaint; (c) subsequent to a request for a validation pursuant to the FDCPA; (d) which was not returned as undelivered by the United States Postal Service; [and] (e) during the one year immediately preceding the filing of the Complaint and ending 21 days thereafter;" (2) appointing plaintiff class representative, and (3) appointing Abraham Kleinman as class counsel. (Pl.'s Notice of Motion [DE 48] at p. 1.) For the reasons set forth below, the motion is granted.

## BACKGROUND

The factual background for this action was set forth in this Court's December 11, 2015 Memorandum and Order denying defendant's motion for summary judgment ( the "MSJ Order"). It is repeated here to the extent necessary to give context to the present motion for class certification.

NRA sent an initial collection letter, dated June 27, 2013, to plaintiff at 19 East Shore Drive, Babylon New York via first-class mail with proper postage affixed (the "June letter"). The letter stated that plaintiff's National Grid accounts had been forwarded to NRA for collection and provided the amount owed on each account. The letter also contained a validation notice required by 15 U.S.C. § 1692g. Due to circumstances arising from damage to her home from Superstorm Sandy, Plaintiff did not physically receive the letter until sometime in August 2013.

By letter dated August 22, 2013, plaintiff requested verification of the alleged debts:

> Dear Sir/Madam:
> Enclosed please find a copy of your June 27, 2013
> collection letter.
> I write with respect to NRA ID # YVY242.

2

>1) I dispute the validity of all portions of National Grid account # 7071080622.
>2) I dispute the validity of all portions of National Grid account # 7071080612.
>3) Please send me verification of these disputed debts.
>4) Please send me the name of the original creditor.
>5) Please send me the address of the original creditor.
>6) PLEASE SEND ME THE TRUE CORPORATE NAME OF NATIONAL GRID LONG ISLAND.
>Thank you,
>/s
>Jeanette Zirogiannis

(Compl. Ex. B (Capitalization in Original).)

Thereafter, NRA sent plaintiff a letter, dated August 27, 2013, which states in pertinent part:

>Our offices are in receipt of your letter of dispute pursuant to 15 U.S.C. § 1681s-2 of the Fair Credit Reporting Act. Please be advised we have reviewed your dispute and find the dispute lacking in any specific facts or information which would allow us to conduct an investigation. Because your dispute alleges no specific information to form the basis for an investigation, we are unable to investigate the dispute pursuant to 15 U.S.C. § 1681s-2(a)(8)(F)(I) of the FCRA.

>Federal Trade Commission regulation 16 C.F.R. § 660.4(d) states a direct dispute notice must include: (1) sufficient information to identify the account or other relationship that is in dispute, such as an account number and the name, address, and telephone number of the consumer, if applicable; (2) the specific information that the consumer is disputing and the explanation of the basis for the dispute; and (3) all supporting documentation or other information reasonable [sic] required by the furnisher to substantiate the basis of the dispute. The documentation may include a copy of the relevant portion of the consumer report that contains the allegedly inaccurate information, a police report, a fraud or identity theft affidavit, a court order, or account statements.
>In acknowledgment of your dispute, we have requested that

3

> consumer reporting agencies report the account as disputed
> . . . .
>
> Listed below is a summary of the charges on the account and
> any applicable fees or interest. Should you have any questions
> regarding this account or if you wish to discuss payment
> arrangements, please feel free to contact us . . . .

(Compl. Ex. C ( the "August letter").)

NRA then sent plaintiff a letter dated September 4, 2013, which states it was enclosing a copy of "the itemized bill(s) you requested. After review, please remit the balances by return mail." (Compl. Ex. C (DE 1 pp. 18-31) (the "September letter").) The letter lists "the accounts included in the amount due" as "National Grid [Account No.] 7071080622 [Amount Owed] 275.58 [Service Date] 10/29/2012" and "National Grid [Account No.] 7071080612 [Amount Owed] 133.63 [Service Date] 10/29/2012." (*Id.*) Included as attachments were an "Account Balance List" for LIPA "Account 7071080622" and an "Account Balance List" for National Grid Account 7071080612." (*Id.*)

Plaintiff did not respond to the August or September letters. She commenced this action on June 25, 2014, alleging that the August letter violates the FDCPA.

In its Memorandum and Order dated December 11, 2015, this Court concluded that "NRA's August letter violates the FDCPA whether analyzed under §1692g or §1692e(10)." (MSJ Order at 15.)

## DISCUSSION

### I. Standard - Class Certification

Class action certification is governed by Federal Rule of Civil Procedure 23.

In seeking class certification, a plaintiff must first demonstrate that the prerequisites contained in Rule 23(a) have been satisfied. Fed. R. Civ. P. 23(a)(1)-(4); *see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008) ("In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a) of numerosity, commonality, typicality, and adequacy.")

Specifically, Rule 23(a) states that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

A plaintiff must also show that the putative class falls within one of the categories set forth in Rule 23(b). Fed. R. Civ. P. 23(b)(1)-(3); *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) ("Not only must each of the requirements set forth in Rule 23(a) be met, but certification of the class must also be deemed appropriate under one of the three subdivisions of Rule 23(b).").

The Second Circuit has emphasized that "the certification decision requires 'rigorous analysis' " on the part of the district court. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006); *see also id.* at 33 n. 3 (finding that the "rigorous analysis" "applies with equal force to all Rule 23 requirements, including

those set forth in Rule 23(b)(3)").  In this regard, the Second Circuit has set forth

the following standard:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*Id*. at 41.  The party seeking class certification bears the burden of showing, by a

preponderance of the evidence, that the requirements of Rule 23 are met.

*Teamsters*, 546 F.3d at 201-04; *see Brown*, 609 F.3d at 476.

## II.    **Rule 23(a) Requirements**

### A.    **Numerosity**

Rule 23(a) requires a finding that the numerosity of injured persons makes

joinder of all class members "impracticable." *Robidoux v. Celani*, 987 F.2d 931, 935

(2d Cir. 1993). Generally, courts will find a class sufficiently numerous when it

comprises forty or more members. *See id.* at 936. A plaintiff need not provide "a

precise quantification of their class," and courts may "make common sense

assumptions" to support a finding of numerosity. *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. 2000). Nevertheless, a plaintiff seeking class certification " 'must show some evidence of or reasonably estimate the number of class members.' " *Id.* (quoting *LeGrand v. New York City Trans. Auth.*, 1999 WL 342286 *3 (May 26, 1999)).

Plaintiff maintains that the numerosity requirement is met as "336 individuals in the State of New York received a similar letter during the relevant time," relying upon the following colloquy between Magistrate Judge Tomlinson at the initial conference held in this matter as support for that figure:

> THE COURT: All right. Well, as I do in all of these cases brought under the Fair Debt Collections Practices Act, I'm going to ask the question whether or not there's been any discussion about trying to resolve this . . . .
>
> MR. KLEINMAN: I've requested of defendant to find out the number of such letters that were issued . . . .
>
> MR. BRIGANDI: Your Honor, defendant believes that this case should be settled on an individual basis . . . . However, based, in good faith, trying to work through this issue, we have attempted to determine the number of similar letters that were sent to consumers in New York within the past prior year before the complaint was filed. There appears to be 336 of those letters. . . . .

(Transcript of Proceedings held on 9/8/2014 (DE 43) at p. 5.)

Defendant disputes that sufficient evidence of numerosity has been

submitted because the class is defined as New York consumers who received the subject letter "<u>subsequent to a request for validation pursuant to the FDCPA</u>" and the foregoing reference to 336 letters was untethered to a FDCPA validation request. (Def's. Opp. Mem. at 2.)

Preliminarily, it is important to note that the currently proposed class definition mirrors that contained in the Complaint. *See* Compl. ¶ 28. Thus, it is appropriate to view counsel's statement against that backdrop absent any affidavit from defendant specifically disputing that the 336 letters were sent subsequent to a FDCPA validation request.

Given that a "Court does not need evidence of exact class size or identity of class . . . and may make common sense assumptions without the need for precise quantification of the class" *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, (E.D.N.Y. 2013) (internal quotations and citations omitted), this Court may reasonably infer based on the materials before it that the number of class members exceeds forty.[2] The Court thus finds that the numerosity requirement has been met.

## B.    Commonality and Typicality

Rule 23's commonality factor " 'requires the plaintiff to demonstrate that the

---

[2] The Court is  cognizant that Defendant's Memorandum references that the subject letter was "designed . . . to respond to consumers who had disputed their debts pursuant to the  FCRA[Fair Credit Reporting Act ] and "is also less frequently sent to consumers whose FDCPA-based disputes were not timely, as was the case here." (Def.'s Opp. Mem. at 4.)  However, "less frequently" is both unspecific and exceedingly unhelpful. Defendant's reluctance to specify how frequently the subject letter was sent to consumers subsequent to a FDCPA validation request warrants an inference that numerosity has been met.

class members have suffered the same injury' which must turn 'upon a common contention . . . of such a nature that it is capable of classwide resolution . . . .' " *Claridge v. North American Power & Gas, LLC*, 2016 WL 7009062 (S.D.N.Y. Nov. 30, 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011))."[C]laims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification" because "uniform misrepresentations" can be adjudicated with "no need for a series of mini-trials." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quotation marks omitted).

"To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.' " *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux*, 987 F.2d at 936)).

The requirements of both commonality and typicality are met here.[3] The claims of the proposed class members turn on the common contention that the subject letter violates the FDCPA and entitles them to statutory damages. *Cf. R.A.G. v. Buffalo City Sch. Dist. Bd. of Educ.*, 569 Fed. Appx. 41, 42 (2d Cir. 2014) (stating commonality met where "entire case is predicated on policy that applied uniformly to all students that qualify for supplemental services under the IDEA.") Typicality is met where, as here, the claims of the proposed class arise from the

---

[3] The Court notes that defendant does not challenge that these two requirements are met.

same course of events and similar arguments are made to prove liability. *See Mazzei v. The Money Store*, 829 F.3d 260, 272 (2d Cir. 2016); *Commer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994).

## D.    Adequacy

"Adequacy entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings*, 574 F.3d at 35 (internal quotation marks and citations omitted). "The focus is on uncovering conflicts of interest between named parties and the class they seek to represent." *Id.* (internal quotation marks and citations omitted).

Defendant contends that plaintiff is not an adequate representative because "she gave willfully false responses in discovery," making her "vulnerable to an aggressive cross-examination at trial" and she has "presented no evidence of her adequacy." (Def.'s Opp. Mem. at 7-11.) Further, counsel is "inadequate as he encouraged false testimony." (*Id.* at 12.) Both assertions are based on plaintiff's deposition  in this matter. According to defendant:

> Plaintiff denied ever having been a plaintiff in any other lawsuits. . . . Plaintiff's counsel, Abraham Kleinman, then coached Plaintiff to  change her testimony by saying "If you're unsure . . . ." Plaintiff then stated "I'm unsure." When [defense] counsel asked her again if she had ever been a plaintiff in other lawsuits, she admitted that she had twice sued in connection with automobile accidents. . . . When asked if she had ever been a plaintiff in any FDCPA matters, she again said she was "unsure."
> In truth, [plaintiff] has been the proposed named plaintiff in at least three other FDCPA class action

lawsuits filed in the Eastern District of New York.

(Def.'s Mem. in Opp. at 8 (citations to deposition omitted).)

Having reviewed the entire deposition (DE 33-5), the Court concludes that it does render plaintiff an inadequate representative. The question of whether plaintiff commenced other lawsuits was first broached as follows:

> Q. You've filed other Fair Debt Collection Practices Act lawsuits, correct?
> A. Yes, I have.
> Q. How many?
> A. I don't know.
> Q. You don't know how many lawsuits you filed?
> A. No.
> Q. You are a class member in those other lawsuits, though, correct?
> A. Possibly.
> Q. You don't know?
> A. I don't know.
> Q. I'm going to move past this. . . .

(DE 33-5 at p. 62-63.)

Later, the following colloquoy took place:

> Q. Have you ever been a plaintiff in any other Fair Debt Collection Practices Act lawsuits?
> MR KLEINMAN: Objection. Asked and answered.
> Q. You can respond.
> A. No.
> Q. You have not been a plaintiff in any other lawsuits?
> A. No.
> MR. KLEINMAN: If you're unsure –
> A. I'm unsure.
> Q. You're unsure whether you're a plaintiff in any other lawsuits?
> A. Lawsuits pertaining to collections.
> Q. Let's start over.

|     | Have you ever been a plaintiff in any lawsuits? |
| --- | --- |
| A. | Yes. |
| Q. | Which lawsuits? |
| A. | Car accidents? |
| . . . | |
| Q. | Besides the car accident, have you been a plaintiff in any other lawsuits? |
| A. | No. |
| Q. | Have you been a plaintiff in any other lawsuits under the Fair Debt Collection Practices Act? |
| A. | I'm unsure, |
| Q. | Are you confused by the question or you don't recall. |
| A. | I don't recall. |

(DE 33-5 at p. 69.25 -71.10.)

Plaintiff did initially testify that she had filed other FDCPA lawsuits. When the topic was later broached, counsel's questions confusedly referred first to FDCPA then "other lawsuits" and "any lawsuits" as well as switched tenses from the present ("You're unsure whether you're a plaintiff in any other lawsuits?") to the past ("Have you ever been a plaintiff in any lawsuits?"). In other words, based on the "cold" transcript it appears to this Court that plaintiff was somewhat confused rather than untruthful. Moreover, given that this Court has already held that the subject letter violates the FDCPA, plaintiff's credibility is a non-issue as to the merits of this action. Finally, the transcript of her deposition demonstrates that "plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon [her] lawyers' advice." *Diaz v. Residential Credit Solutions, Inc.*, 297 F.R.D. 42, 52 (E.D.N.Y. 2014). Among other things, Plaintiff knew why the case was brought, the basis for the claim that the subject letter

violates the FDCPA, and the difference between disputing a false entry on her credit report and a debt collector's account. In sum, the Court finds that plaintiff will adequately represent the class.

With respect to plaintiff's counsel's "If you're unsure," that appears it be an attempt - albeit a clumsy one - to ensure the record was not misleading given her prior testimony that she was in fact a plaintiff in a FDCPA action, distinguishing this case from what transpired in *Friedman-Katz v. Lindt & Sprungli (USA). Inc.*, 270 F.R.D. 150 (S.D.N.Y. 2010). Counsel has been both counsel and co-counsel in other FDCPA actions, including in this District, which supports the conclusion that he is experienced. Indeed, while perhaps not rising to the level of an estoppel, it is notable that this defendant recently consented to plaintiff's counsel being appointed class counsel in connection with the settlement in *Gadime v. NRA Group, LLC*, Civil Action No. 15-04841 (E.D.N.Y.). Based on the record before this Court, plaintiff's attorney appears qualified, experienced and able to conduct the litigation.

Having determined that plaintiff has satisfied the requirements of Rule 23(a), it will now address whether the putative class falls within one of the categories set forth in Rule 23(b).

## III.   Rule 23(b)

Rule 23(b) provides that once Rule 23(a), a class action may be maintained if

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B) adjudications with respect to individual class
> members that, as a practical matter, would be
> dispositive of the interests of the other members
> not parties to the individual adjudications or would
> substantially impair or impede their ability to
> protect their interests;
> (2) the party opposing the class has acted or refused to act
> on grounds that apply generally to the class, so that final
> injunctive relief or corresponding declaratory relief is
> appropriate respecting the class as a whole; or
> (3) the court finds that the questions of law or fact
> common to class members predominate over any
> questions affecting only individual members, and that a
> class action is superior to other available methods for
> fairly and efficiently adjudicating the controversy. . . .

Fed. R. Civ. P. 23(b). *See Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) ("Not only must each of the requirements set forth in Rule 23(a) be met, but certification of the class must also be deemed appropriate under one of the three subdivisions of Rule 23(b).").

Although plaintiff asserts that class certification is appropriate under all three subdivision of Rule 23(b), as the Court concludes that class certification is appropriate under subdivision 3, it will limit its discussion to that provision.

Rule 23(b)(3)requires two conditions be met. The first prong is predominance. "The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation  . . . . [T]he requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Mazzei v. The Money Store*, 829 F.3d

260, 272 (2d Cir. 2016) (internal quotation marks and citations omitted). While

Rule 23(a)'s commonality requirement mandates that common questions of law or

fact exist among the proposed class members, Rule 23(b)(3)'s predominance

requirement "is more stringent and requires that common questions be the focus of

the litigation." *Diaz v. Residential Credit Solutions, Inc.*, 297 F.R.D. 42, 53

(E.D.N.Y. 2014).

Here, the common question is whether the subject letter sent by defendant to

consumers violated the FDCPA and predominates the litigation. In fact, defendant

does not contest that the predominance requirement has been meet. Rather, it

argues only that the second prong of Rule 23(b)(3) - superiority - is not satisfied.

(*See* Def.'s Opp. Mem. at 14-15.)

The second prong of Rule 23(b)(3) requires a determination that a class action

is superior to other methods of adjudication, using the following four guideposts:

> (A) the interest of the members of the class in individually
> controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the
> controversy already commenced by or against members of
> the class; (C) the desirability or undesirability of
> concentrating the litigation of the claims in the particular
> forum; and (D) the difficulties likely to be encountered in
> the management of a class.

Fed. R. Civ. P. 23(b)(3).

Here, "class members have little interest in maintaining separate actions

since [there has been a determination] of liability." *In re Nassau County Strip

Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006). The progress of this litigation,

including the determination of liability, and the streamlining that will result from

concentrating litigation in this forum further support certification of the class. *Id.*

Given the relatively small size of the class, no difficulties are anticipated in

managing the class.

Defendant asserts that the interest of class members in controlling the

prosecution of separate actions warrants the conclusion that a class action is not

superior:

> Each class member of Plaintiff's proposed class
> potentially has a higher interest in controlling his or her
> own case because of the class action limit on statutory
> damages. If each individual plaintiff controlled his/her
> own cases, he/she would each be eligible, if successful, to
> recover statutory damages of up to $1,000, depending on
> the circumstances of their own cases. *See* 15 U.S.C.
> 1692(k)(2)(a). Moreover, they would be entitled to pursue
> actual damages, where appropriate. *See* 15 U.S.C.
> 1692k(a)(1).

(Def.'s Mem. in Opp. at 15.)

Damages recoverable in a FDCPA are governed by 15 U.S.C. §1692k which

distinguishes between damages recoverable by an individual and those recoverable

in a class action. It provides in relevant part:

> Except as otherwise provided by this section, any debt
> collector who fails to comply with any provision of this
> subchapter with respect to any person is liable to such
> person in an amount equal to the sum of--
> (1) any actual damage sustained by such person as a
> result of such failure;
> (2)(A) in the case of any action by an individual, such
> additional damages as the court may allow, but not
> exceeding $1,000; or
> (B) in the case of a class action, (i) such amount for each
> named plaintiff as could be recovered under subparagraph
> (A), and (ii) such amount as the court may allow for all
> other class members, without regard to a minimum

individual recovery, not to exceed the lesser of $500,000
or 1 per centum of the net worth of the debt collector; and

. . .

15 U.S.C. § 1692k(a).

While the amount of damages recoverable in a class action differ from those recoverable in an individual lawsuit, that difference does not preclude certification of the class. To the extent that an individual asserts damages exceeding those recoverable by that individual in a class action, such individual may exercise its right to opt-out of the class.

## CONCLUSION

For the reasons set forth above, plaintiff's motion to certify a class consisting of "(1) all natural person[s] in the State of New York; (2) to whom Defendant sent a written communication containing language materially similar to Exhibit C of the Complaint; (3) subsequent to a request for a validation pursuant to the FDCPA; (4) which was not returned as undelivered by the United States Postal Service;  [and] (5) during the one year immediately preceding the filing of the Complaint and ending 21 days thereafter" is granted.

**SO ORDERED.**

Dated: Central, Islip, New York
     December 22, 2016

/s/  Denis R. Hurley
Denis R. Hurley
District Judge